Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)


JOURNEY OPERATING, L.L.C.,
)
 

JOURNEY ACQUISITION-I, L.P., and
)


JOURNEY 2000 L.P.,
)
 No. 08-02-00369-CV

)


 Appellants,
)
 Appeal from

)
 

v.
)
 142nd District Court

)


POGO PRODUCING COMPANY,
)
 of Midland County, Texas

)


 Appellee.
)
 (TC# CV-43,402)


MEMORANDUM OPINION



 Journey Operating, L.L.C., Journey Acquisition-I, L.P., and Journey 2000 L.P. appeal from
a declaratory judgment determining that Pogo Producing Company is the duly elected successor
operator under a joint operating agreement. For the reasons that follow, we affirm.

UNDERLYING FACTS


 The issue in this case is whether the trial court correctly determined that Pogo was duly
elected as the successor operator to Merit Energy Company pursuant to the Joint Operating
Agreement dated November 8, 1971 (the JOA). The JOA governs the oil and gas operations on the
lands, leases, and mineral interests in certain property located in Eddy County, New Mexico (the
Unit Area). Articles 18 and 20 of the JOA govern election or selection of an operator under varying
circumstances.

 Prior to October 1, 2000, Merit Energy Company was the operator under the JOA. On
September 29, 2000, two of the Appellants, Journey Acquisition-I and Journey 2000, acquired
working interests in the Unit Area from Merit Energy Partners, L.P., Merit Energy Partners III, L.P.,
Merit Energy Partners VII, L.P. and Merit Partners, L.P. (the Merit Entities). Journey Operating does
not own and did not acquire any interest in the Unit Area, and therefore, is not a party to the JOA. 
Pogo also owns working interests in the property and is a party to the JOA as a successor in interest. 
 On October 17, 2000, Journey Operating notified all of the working interest owners, except
Devon SFS Operating, Inc. and Rick's Exploration II, L.P., that Journey Acquisition-I and Journey
2000 had purchased the interest of the Merit Entities effective July 1, 2000. At the time, both the
Journey Entities and Pogo were unaware of the interests of Devon SFS Operating and Rick's
Exploration in the Unit Area. The letter also notified the working interest owners that Journey
Operating proposed to succeed Merit as operator and it solicited the vote of the working interest
owners to that effect. Journey Operating took over the oil and gas operations in the Unit Area as of
October 1, 2000. By letter dated October 20, 2000, Pogo opposed the election of Journey Operating
as operator and advised all working interest owners that the company would cast its vote for Pogo
itself to succeed Merit. It also solicited the vote of the other working interest owners. Even though
the other working interest owners cast their votes for Pogo, Journey Operating notified the working
interest owners on November 6, 2000 that Journey Operating had been elected operator by a
"majority of the working interest." Journey Operating had used a "weighted average" method of
calculating the votes of the working interest owners because the working ownership interest varied
from well to well in the Unit Area. Further, it had voted the interests of the non-consenting parties
in the Sundance Federal #21 and #22 wells. On November 20, 2000, Pogo complained about the
"weighted average" method and claimed that Journey had improperly voted the interests of the non-consenting parties. It also advised Journey Operating, based on conversations with other working
interest owners, that Journey Operating had no votes, except for those cast by the "Journey
affiliates," and that Pogo had been elected as successor operator. Pogo announced its intention to
take over as operator on December 1, 2000. Journey Operating responded by letter dated November
21, 2000. It confirmed that it had been elected successor operator by using a "weighted average"
method of calculating the votes. Journey Operating warned Pogo that if it attempted to unilaterally
take over as operator, it would be in breach of the JOA. The parties were unable to reach an
agreement regarding the operator issue.

 On April 18, 2001, Journey Operating forwarded to Pogo a title opinion indicating that the
East ½ of Section 8 was part of the Unit Area. Pogo received the title opinion on April 20, 2001. 
The working interest owners in this area, Devon SFS Operating and Rick's Exploration, had not been
contacted by either Pogo or Journey Operating regarding the operator issue. On May 22, 2001, Pogo
sent a letter to these working interest owners soliciting their votes. Journey Operating also solicited
their votes by letter dated June 12, 2001. Devon SFS Operating cast its vote for Pogo while Rick's
Exploration assigned all of its interests to Pogo effective October 1, 2000. 

 On June 12, 2001, Pogo filed a declaratory judgment action against the Journey Entities 
seeking a declaration that Pogo had been elected as the successor operator to Merit Energy Company
under the JOA. The Journey Entities responded that Journey Operating was the proper successor
under the JOA. The trial court granted a temporary injunction preserving the status quo by
prohibiting Journey Operating from drilling three new wells in the Unit Area. At the trial on the
merits, the court determined that neither Journey Operating nor Pogo had become operator pursuant
to Article 18 of the JOA but that Pogo had been elected operator under Article 20. The Journey
Entities appeal.

SCOPE OF DECLARATORY JUDGMENT RELIEF


 In their second and third issues, the Journey Entities argue that the trial court erroneously
permitted Pogo to obtain relief on grounds not specifically raised in its pleadings. They content that
because Pogo only sought a declaration that it had been elected operator under Article 18 of the JOA,
the trial court lacked the authority to find that Journey Operating was not the proper operator under
Article 18. They also contend that the trial court lacked authority to consider other portions of the
JOA and thus could not find that Pogo was elected operator under Article 20. We understand the
Journey Entities to rely on the general rule that a trial court lacks the authority to grant relief in the
absence of pleadings supporting that relief. See Stoner v. Thompson, 578 S.W.2d 679, 682-83 (Tex.
1979); R. Conrad Moore & Assocs., Inc. v. Lerma, 946 S.W.2d 90, 96 (Tex.App.--El Paso 1997, writ
denied). The pleadings invoke the trial court's jurisdiction to render a judgment. Moreno v. Moore,
897 S.W.2d 439, 442 (Tex.App.--Corpus Christi 1995, no writ).

 Pogo filed suit under the Declaratory Judgments Act. See Tex.Civ.Prac.&Rem.Code Ann.
§ 37.001-37.011 (Vernon 1997 & Vernon Supp. 2004). The purpose of a suit for declaratory
judgment is to obtain clarification of one's rights, status and other legal relations. See
Tex.Civ.Prac.&Rem.Code Ann. § 37.002(b)("This chapter is remedial; its purpose is to settle and
to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations;
and it is to be liberally construed and administered."). The Act expressly permits a court having
jurisdiction to construe a contract and thereby determine the rights and obligations of the parties. 
See Tex.Civ.Prac.&Rem.Code Ann. § 37.004(b). No particular type of pleading is required by the
Declaratory Judgment Act and pleadings are to be liberally construed in support of the judgment. 
First American Title Ins. Co. of Texas v. Willard, 949 S.W.2d 342, 352 (Tex.App.--Tyler1997, writ
denied); Canales v. Zapatero, 773 S.W.2d 659, 661 (Tex.App.--San Antonio 1989, writ denied);
James v. Hitchcock Independent School Dist., 742 S.W.2d 701, 704 (Tex.App.--Houston [1st Dist.]
1987, writ denied); Frost v. Sun Oil Co., 560 S.W.2d 467, 473 (Tex.Civ.App.--Houston [1st Dist.]
1977, no writ).

 In its pleadings, Pogo set forth the facts underlying the controversy. Among other things, it
specifically alleged that "Pogo and each of the Defendants, save and accept [sic] for Journey
Operating, are owners of undivided working interests in lands and leases located in Eddy County,
New Mexico, which lands and leases are included within the Unit Area of that Operating Agreement
dated November 8, 1971, such parties being successors in interest to the original parties to such
Operating Agreement." Pogo attached a copy of the JOA as well as pertinent correspondence
between the parties. It requested that the trial court determine that Pogo was the successor operator
pursuant to Article 18 of the JOA, and alternatively, that it was elected operator "under the terms of
the Operating Agreement." 

 Pogo's pleadings are sufficient to invoke the trial court's authority to construe the JOA and
determine the rights of the parties under the agreement. While Pogo did not specifically ask the
court to find that Journey Operating was not a proper party to act as operator under Article 18, its
pleadings did allege that Journey Operating was not a party to the agreement and it did not own any
working interest in the Unit Area. Pogo asked the trial court to determine that Pogo had been elected
operator by a majority of the working interest under the terms of the operating agreement and it
prayed that the court enter a declaration that it was the rightful operator under the JOA. We find that
the pleadings are sufficient to support the court's determination that Journey Operating could not
serve as operator under Article 18 because it was not the transferee of Merit Energy's interests. 
Likewise, Pogo did not specifically refer to Article 20 of the JOA, but its pleadings did request that
if the trial court determined that Journey Acquisition and Journey 2000 were entitled to vote in the
selection of a new operator, something they could not do under the terms of Article 18, then the trial
court should further determine that Pogo had been elected operator by a majority of the working
interest under the terms of the operating agreement. This alternative pleading is sufficient to raise
the issue of Pogo's election under Article 20. Construing the pleadings liberally, we find them
sufficient to support the declaratory judgment rendered by the court. Issues Two and Three are
overruled.

ELECTION OF A NEW OPERATOR


 Turning to the merits of the appeal, the Journey Entities contend in Issue One that the trial
court erroneously determined that Journey Operating did not become the operator pursuant to Article
18 and that Pogo Producing was elected pursuant to Article 20. In response, Pogo argues that it was
properly elected operator under either Article 18 or Article 20.

Standards of Review


 The arguments raised by Issue One implicate overlapping standards of review. First, the
Journey Entities do not challenge the trial court's determination that the JOA is unambiguous. The
interpretation of an unambiguous contract is a question of law, to which we apply a de novo standard
of review. MCI Telecommunications Corporation v. Texas Utilities Electric Company, 995 S.W.2d
647, 650 (Tex. 1999); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). In an effort to harmonize
and give effect to all the provisions of the contract, we examine and consider the entire writing so
that none will be rendered meaningless. National Union Fire Insurance Co. of Pittsburgh, PA v. CBI
Industries, Inc., 907 S.W.2d 517, 520 (Tex. 1995). No single provision will control; rather, all the
provisions must be considered with reference to the whole instrument. Id. The primary concern of
a court when construing a written contract is to ascertain the true intent of the parties as expressed
in the instrument. Id. When parties disagree over the meaning of an unambiguous contract, the court
must determine the parties' intent from the agreement itself, not from the parties' present
interpretation. Hill v. Heritage Resources, Inc., 964 S.W.2d 89, 112 (Tex.App.--El Paso 1997, pet.
denied).

 Second, the trial court entered written findings of fact and conclusions of law. The Journey
Entities have not properly challenged any of the trial court's findings of fact. Findings of fact made
by the trial judge, sitting as the factfinder, enjoy the same status as findings of a jury. Anderson v.
City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991); Heritage Resources, Inc. v. Hill, 104 S.W.3d
612, 619 (Tex.App.--El Paso 2003, no pet.). Although findings of fact are reviewable for legal and
factual sufficiency, unchallenged findings are binding upon the appellate court unless the contrary
is established as a matter of law or there is no evidence to support the findings. Anderson, 806
S.W.2d at 794; McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). 

 Conclusions of law should be attacked on the ground that the law was incorrectly applied to
the facts. Heritage Resources, 104 S.W.3d at 619; Foster v. Foster, 884 S.W.2d 497, 499
(Tex.App.--Dallas 1993, no writ). We review conclusions of law de novo to determine whether they
are correct. Tarrant County v. Denton County, 87 S.W.3d 159, 169 (Tex.App.--Fort Worth 2002,
pet. denied)(op. on reh'g). Erroneous conclusions of law are not binding on the appellate court and
if the controlling findings of fact will support a correct legal theory, are supported by the evidence
and are sufficient to support the judgment, then the adoption of erroneous legal conclusions will not
mandate reversal. Heritage Resources, 104 S.W.3d at 621.

 Article 18


 Article 18 of the JOA is entitled "Preferential Right to Purchase." The original parties to the
JOA struck the first paragraph of Article 18 which pertained to the other parties' preferential right
to purchase should any party to the JOA desire to sell all or any part of its interest in the Unit Area. 
The second paragraph provides as follows:

 Should a sale be made by Operator of its rights and interests, the other parties shall
have the right within sixty (60) days after the date of such sale, by majority vote in
interest, to select a new Operator. If a new Operator is not so selected, the transferee
of the present Operator shall assume the duties of and act as Operator. In either case,
the retiring Operator shall continue to serve as Operator, and discharge its duties in
that capacity under this agreement, until its successor Operator is selected and begins
to function, but the present Operator shall not be obligated to continue the
performance of its duties for more than 120 days after the sale of its rights and
interests has been completed. 


 The Journey Entities argue on appeal that Journey Operating became the transferee operator
after Pogo failed to be timely elected operator under Article 18. The trial court made several factual
findings which are pertinent to resolution of this argument:

 Merit Energy Company and the Merit Entities transferred any working interest they owned
in the Unit Area to Journey Acquisition-I and Journey 2000. 


 The working interest owners' receipt of Journey Operating's October 17, 2000 letter
triggered the application of Article 18. 


 Journey Operating's October 17, 2000 letter, which was received by the working interest
owners on October 20, 2000, provided them with notice of the sale of the Merit Entities'
interests to the Journey Entities. 


 Article 18's sixty day window began running on October 20, 2000 and ended on December
19, 2000. 


 The Journey Entities are not included as part of "the other parties" referenced in Article 18,
and therefore, they cannot vote for a new operator under Article 18. 


 Journey Operating does not own any working interest in the Unit Area and it did not acquire
any interest from the Journey Entities. 


 Neither Journey Acquisition-I nor Journey 2000 has assumed the duties of or acted as
Operator under the JOA. 


 Pogo solicited the votes of the other working interest owners in Articles 4 and 5 of the Unit
Area to be elected as the new operator. 


 Journey Operating claimed to be operator based upon the affirmative votes of the Journey
Interests. 


 Even though the Journey Entities cannot vote under the terms of Article 18, Journey
Operating used a weighted average of the Journey Entities vote in the Sundance Federal Well
#1, Sundance Federal Wells #2 through 15 and Sundance Federal Wells #21 and 22, lying
and situated in Sections 4 and 5 of the Unit Area. 


 Prior to April 20, 2001, neither the Journey Entities nor Pogo had solicited the votes of the
working interest owners in the East 1/2 of Section 8.


 Actual notice to Pogo and the Journey Entities of the East 1/2 of Section 8 being part of the
Unit Area triggered a new sixty (60) day window for soliciting votes from the working
interest owners in the East ½ of Section 8, beginning April 20, 2001 and ending on June 17,
2001. 


 During the sixty (60) day period beginning on April 20, 2001 and ending on June 17, 2001,
neither Journey Operating nor Pogo received the affirmative vote of a majority of the
working interest in the East 1/2 of Section 8 to be elected the new operator under Article 18. 


The trial court also made the following conclusions of law:


 The phrase "the other parties" used in Article 18 means those parties who own a working
interest in the Unit Area, but does not include the operator or the purchaser/transferee of the
operator's interest. 


 Since Journey Operating does not own any working interest in the Unit Area, it is a stranger
to the JOA. 


 Journey Operating can only become the operator of the Unit Area if elected by a majority
vote in interest of the working interests entitled to vote. 


 Under Article 18, only "the other parties" have the right to vote their respective working
interest for the selection of a successor operator. 


 Under the provisions of Article 18, the Journey Entities do not have the right to vote their
respective working interests in the Unit Area. 


 Article 18 creates a sixty (60) day window for the voting of "the other parties" to select a
new operator. 


 During the sixty (60) day period established by Article 18, neither Pogo nor Journey
Operating was elected as the new operator. 


 Neither Journey Operating nor the Journey Entities can rely on the second sentence in Article
18 because Journey Operating is not a transferee of the former operator. 


 The Journey Entities do not challenge the trial court's conclusion that Journey Acquisition-I
and Journey 2000 are not entitled to vote in an election under Article 18 nor do they assert that
Journey Operating was elected operator under Section 18. Rather, they argue throughout their brief
that Journey Operating automatically succeeded Merit Energy Company as operator. In making this
argument, they assert generally that the trial court erroneously concluded that Journey Operating is
not the transferee of the former operator. Other than arguing that the issue was not properly before
the court, the Journey Entities do not provide any analysis or authority for their position. We have
already concluded that the trial court had jurisdiction and authority to determine the rights of the
parties under the JOA, including whether Journey Operating could act as operator under the terms
of the JOA. The Journey Entities do not challenge the trial court's factual determinations that
Journey Acquisition-I and Journey 2000 acquired a working interest in the Unit Area from the prior
operator and Journey Operating did not acquire any working interest. They also do not challenge
the court's finding that Journey Acquisition-I and Journey 2000 have not assumed the duties of or
acted as operator under the JOA. Even if it could be said that the Journey Entities have challenged
these findings, there is no evidence in the record that Journey Operating is the transferee of Merit
Energy. Thus, the trial court properly concluded that Journey Operating is not the transferee and did
not become operator by virtue of the second sentence of Article 18.

Article 20


 Article 20 is entitled "Resignation of Operator" and provides:

 Operator may resign from its duties and obligations as Operator at any time upon
written notice of not less than ninety (90) days given to all other parties. In this case,
all parties to this contract shall select by majority vote in interest, not in numbers, a
new Operator who shall assume the responsibilities and duties, and have the rights,
prescribed for Operator by this agreement. The retiring Operator shall deliver to its
successor all records and information necessary to the discharge by the new Operator
of its duties and obligations. 


The trial court made the following findings of fact:


 Article 20 was invoked by the Journey Operating letter of October 17, 2000. 


 Journey Acquisition-I and Journey 2000 are entitled to vote under Section 20. 


 Article 20 does not have a sixty (60) day time limit. 


 On or about July 14, 2001, Pogo obtained from Rick's Exploration sufficient working
interest in the East ½ of Section 8 to own a majority vote of the working interest. 


 Pogo voted its working interests in both the shallow and deep rights of the East ½ of Section
8 to elect itself as the new operator. 


 Pogo received a majority of the voting interest of the Unit Area as a whole and was selected
as the operator under Article 20. 

 

 The Journey Entities first argue that no election took place under Article 20 because all of
the correspondence refers only to an election under Article 18. They fail to explain why it is
necessary for the correspondence soliciting votes to specify that the election is taking place under
Article 20. The JOA does not require such notice and there can be no claim of surprise by the
Journey Entities as they solicited the votes of the other parties even though they were not entitled to
do so under the terms of Article 18 but were only entitled to vote for an operator under Article 20.

 The Journey Entities next assert that Articles 18 and 20 are mutually exclusive, and since the
parties intended to invoke the election provisions of Article 18, Pogo cannot also rely on Article 20. 
They also allege that Article 18 is a more specific provision which controls over the more general
provision, Article 20. There is no language in the contract indicating that Articles 18 and 20 are
mutually exclusive. Articles 18 and 20 are intended to address different factual situations but there
is no support for the argument that one is intended to govern the other.

 The Journey Entities maintain that the trial court's construction of the JOA eviscerates
Article 18 because there can never be a time limit for concluding any operator election, and an
operator cannot succeed to the position by virtue of acquiring the prior operator's working interest
as provided by Article 18. We disagree. These arguments fail to take into account that Journey
Operating did not satisfy the requirements of Article 18 by either being elected operator by "the other
parties" within sixty days of the sale or by becoming the transferee of Merit Energy. If Journey
Operating had done either, it would have become operator under Article 18 and it would have been
unnecessary to look to the provisions of Article 20 to elect an operator.

 Finally, the Journey Entities argue that Article 20 does not apply to the facts of this case
because Merit Energy did not provide notice of its resignation as operator ninety days prior to the
election. We do not view the ninety-day notice requirement as a condition precedent to an election. 
If an operator resigns and does not give the other parties notice of its resignation, but does not sell
its working interest, then no election could occur under either Article 18 or Article 20. In these
circumstances, the property would go unoperated. Such an unreasonable and unworkable result
could not have been the intention of the parties. The purpose of the ninety-day notice in Article 20
is to provide the parties to the JOA with adequate time to select a new operator so that the property
does not go unoperated. It also allows the new operator sufficient time to assume operations. There is no evidence that Merit Energy did not resign. According to Journey Operating's
October 17, 2000 letter, it had taken over as operator as of October 1, 2000 following the purchase
of the Merit Entities' working interest by Journey Acquisition-I and Journey 2000. Because there
can only be one operator under the JOA, the only conclusion which could be drawn from the letter
is that Merit Energy had resigned as operator due to the sale of its working interest. The trial court
correctly concluded that the October 17, 2000 letter triggered the application of Article 20 and that 
Pogo obtained sufficient votes to become operator under Article 20. Issue One is overruled. It is
therefore unnecessary to address Pogo's alternative argument that it was elected operator under
Article 18. Having overruled each of the issues presented on appeal, we affirm the judgment of the
trial court.


February 12, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.