**Henry YAP, Appellant,**

v.

**ANR FREIGHT SYSTEMS, INC. &
David Glenn Coplin, Appellees.**

No. 01–89–00895–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 10, 1990.

John F. Vecchio, Houston, for appellant.

Jeffrey H. Marsh, Houston, for appellees.

Before EVANS, C.J., and MIRABAL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a take-nothing judgment entered on a jury verdict in an automobile-truck collision case. Appellant, Henry Yap, sued appellees, ANR Freight Systems, Inc. ("ANR"), and its employee-driver, David Glenn Coplin, for personal injuries resulting from the collision. A jury found that both Yap and Coplin were negligent, that *neither* Yap's nor Coplin's negligence was a proximate cause of the collision, and that ANR did not negligently entrust its vehicle to Coplin.

In his first point of error, Yap asserts that the trial court erred in entering the take-nothing judgment against him because there was no evidence to support the jury's negative finding that Coplin's negligence was not a proximate cause of the collision; alternatively, he urges that such finding was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

■ When a jury fails to answer an issue in favor of an appellant who has the burden of proof on the issue, the judgment entered on the issue will be upheld against a "no evidence" challenge even though there is no evidence to support the jury's negative finding. *Ritchey v. Crawford,* 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ). We reject Yap's contention of "no evidence" to support the jury's finding that Coplin's negligence was not a proximate cause of the occurrence, because Yap had the burden at trial to show that Coplin's negligence *was* a proximate cause; Coplin was not obliged to prove that his negligence was *not* a proximate cause. *See id.*

To prevail on his "no evidence" complaint, Yap must demonstrate on appeal that the evidence conclusively established all vital facts in his favor on the proximate cause issue. *Smith v. Central Freight Lines, Inc.,* 774 S.W.2d 411, 412 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Ritchey,* 734 S.W.2d at 86. We must first review the record for evidence to support the jury's finding, while ignoring all evidence to the contrary. If there is none, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Holley v. Watts,* 629 S.W.2d 694, 696–97 (Tex.1982); *cf. Montes v. Texas Employers' Ins. Ass'n,* 779 S.W.2d 485, 487 (Tex.App.—El Paso 1989, writ denied) (only one "hurdle" on appeal, namely, "[d]oes a review of the entire record establish the proposition as a matter of law[.]"). Proximate cause exists as a matter of law only if the circumstances are such that reasonable minds could not differ. *Moughon v. Wolf,* 576 S.W.2d 603, 606 (Tex.1978).

■ As to Yap's factual sufficiency challenge, this Court must examine all the evidence, and set aside the verdict only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The question of proximate cause is one of fact particularly within the province of the jury, and a jury finding on proximate cause will be set aside

only in the most exceptional circumstances. *Friedan v. Pan Tex Hotel Corp.*, 653 S.W.2d 365, 367 (Tex.App.—San Antonio 1983, no writ); *Glover v. City of Houston*, 590 S.W.2d 799, 801 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

With these standards in mind, we will review the evidence. On the day of the accident, Coplin, a veteran truck driver of 27 years, was operating ANR's 18–wheel truck and trailer rig southbound on Mykawa Road; Yap was operating his vehicle northbound on Mykawa. It was misting rain, and the road was wet. Coplin testified that he always checked his brakes before he left the terminal, that he did so on this particular day, and that his brakes were working at the time of the collision.

Coplin testified that a red car pulled out onto Mykawa from Dillon Street in front of his truck without warning, that he first saw the red car when he was 10 to 15 feet from the intersection, that he "hit" or "slammed on" his brakes to avoid a collision with it, that he tried to keep his truck within his lane of traffic, and that the braking caused his truck to jackknife over the centerline into Yap's lane. Coplin's trailer collided with Yap's car in Yap's northbound lane a few feet from the centerline. Blue paint, the color of Yap's car, was found on the front left wheels of the trailer. Coplin testified that he had been travelling at 25 to 30 mph; that if he had braked any other way, he would have struck the red car; and that he did everything within his ability to stop his truck safely and avoid collision with the red car.

Officer Wilbur Pete, the investigating police officer, testified that, based on a one or two car length distance between Coplin's vehicle and the red car that pulled out from Dillon Street, Coplin would not have been able to brake other than as he did. Officer Pete testified that the speed limit on Mykawa was 35 mph, that Coplin's failure to control speed was a factor contributing to the collision, and that the red car pulling out from the side street could also have been a factor.

Eyewitness Eurah Cyril testified that Coplin's truck was not speeding, but travelling at 30 to 35 mph; that she was driving her car about one car length behind Yap's car, and saw the events leading up to the collision and the collision itself; that the red car "just cut across" in front of the truck when the car was less than one car length from the truck; and that if Coplin had not hit his brakes, the truck would have struck the red car. She knew of no way Coplin could have avoided the collision, or of any way it could have been avoided unless "maybe if the red car had stopped or if he wasn't so close to the trailer truck."

Yap's expert accident reconstructionist, Richard Turner, testified that a driver of an 18–wheeler, when faced with hazardous conditions on a highway, is required to first slow down and, if the conditions are bad enough, stop. His opinion was that Coplin should have slowed, and that if he had reduced his speed while approaching the intersection, or if he had applied his brakes in a normal manner, there would have been no collision. Turner's opinion was not affected by Cyril's testimony that a car crossed very close to the truck because Coplin should have seen the car well in advance. He acknowledged that the right-of-way belonged to Yap and Coplin, not the red car. In his opinion, Yap was not negligent, although he took no evasive action.

On the negligent entrustment question, Coplin testified that he underwent surgery for blocked arteries in 1983, and was given medication for high blood pressure. In 1985, he had a checkup to see if there was any more blockage. Yap offered Coplin's medical records dated July 1983, October 1983, October 1984, and September 1985; the accident occurred on January 16, 1986. The medical records indicated that Coplin had experienced blackouts, blindness in one eye, and high blood pressure. However, there was no evidence that Coplin suffered a blackout or blindness at the time of the accident. Coplin testified that he had no problem with his vision on the day of the accident, and other evidence indicated that Coplin was earlier seen and passed for duty by an ANR physician on December 7, 1985, five weeks before the accident. Yap's ex-

pert, Dr. Richard Batson, testified that Coplin still had a disease of the heart, and that he would not have passed Coplin to drive as of September 1985.

A 1980 letter was admitted into evidence from Ron Williams, of the Colorado Safety Department, addressed to Jack McCoy in ANR's Houston terminal. It stated that Coplin's name appeared in a memo dated October 3, 1980, as an employee at the Houston terminal whom the Department did not feel met the standards for hiring at Graves Truck Lines, Inc. (ANR took over Graves after the letter, and prior to the accident). Williams was surprised to see Coplin's name on Graves' regular payroll. Graves' employee Roy Thomas had earlier told Williams' secretary that Coplin had worked out all his problems several years prior to the memo; however, Williams wrote that he did not feel Thomas was in a position to state who could be hired at the Houston terminal.

The charge submitted to the jury included definitions of unavoidable accident[1] and sudden emergency,[2] and stated provisions of the Federal Motor Carrier Safety Regulations[3] setting out standards of operation under hazardous conditions and driver qualifications.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), and expert testimony is not ordinarily dispositive of an issue. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). The jury is usually allowed to decide the issue of causation when general experience or common sense will enable a layman to fairly determine the causal relationship between a collision and an injury. *Zippy Properties, Inc. v. Boyd,* 667 S.W.2d 312, 315 (Tex.App.—Waco 1984, writ ref'd n.r. e.).

As plaintiff, Yap is required to prove proximate cause even in a negligence per se situation (which Yap argues was established by the finding of negligence on Coplin's part), *Missouri Pac. R.R. v. American Statesman,* 552 S.W.2d 99, 103 (Tex. 1977); *East Tex. Motor Freight Lines v. Loftis,* 148 Tex. 242, 247, 223 S.W.2d 613, 616 (1949), because the federal regulations about which the jury was instructed merely establish a standard of care required by law.

1. "An occurrence may be an unavoidable accident, that is, an event not proximately caused by the negligence of any party to it."

2. "When a person is confronted by an emergency arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances."

3. "The Federal Motor Carrier Safety Regulations provide:
Extreme caution in the operation of a motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the vehicle shall be discontinued and shall not be resumed until the vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the motor vehicle may be operated to the nearest point at which the safety of passengers is assured.
A person shall not drive a motor vehicle unless he is qualified to drive a motor vehicle. A motor carrier shall not require or permit a person to drive a motor vehicle unless that person:
1. Can, by reason of experience, training, or both, safely operate the type of motor vehicle he drives.
2. Is physically qualified to drive a motor vehicle. A person is physically qualified to drive a motor vehicle if that person has no current clinical diagnosis of any cardiovascular disease of a variety known, has no clinical diagnosis of high blood pressure likely to interfere with his ability to operate a motor vehicle safely or has no established medical history or clinical diagnosis of vascular disease which interferes with his ability to control and operate a motor vehicle safely.
A motor vehicle must have brakes adequate to control the movement of, and to stop and hold, the vehicle or combination of vehicles.
Failure to comply with the regulations is negligence."

The two elements of proximate cause are cause in fact and foreseeability. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987). Yap was required to convince the jury that Coplin's negligence, to be a proximate cause, was a substantial factor and that no harm would have occurred without it. *Id.* Negligence cannot be a cause in fact unless "but for" the conduct in question, the event would not have happened. *Austin Ranch Enter., Inc. v. Wells*, 760 S.W.2d 703, 709 (Tex. App.—Fort Worth 1988, writ denied). The jury could have considered, and apparently did consider, that any negligence on Coplin's part was not a substantial factor; that "but for" the red car suddenly pulling on to Mykawa, the collision would not have occurred; and that the occurrence was an "unavoidable accident," as that term was defined in the jury instructions. Coplin was not bound to anticipate negligence or unlawful conduct on the part of the driver of the vehicle that pulled out in front of him. *DeWinne v. Allen*, 154 Tex. 316, 320, 277 S.W.2d 95, 98 (1955); *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191 (Tex.App.—San Antonio 1988, writ denied).

After review in accordance with the standards previously set out, we find that the evidence at trial was such that reasonable minds could differ on whether Coplin's negligence and past medical problems were a proximate cause of the collision. Accordingly, Yap did not establish proximate cause as a matter of law. *Cf. Moughon*, 576 S.W.2d at 606 (no evidence of a legally acceptable excuse, e.g., emergency, incapacity, or impossibility).

We hold that the evidence was legally and factually sufficient to support the jury's finding of no proximate cause. The jury may accept or reject any or all of a witness' testimony. *Centroplex Ford, Inc. v. Kirby*, 736 S.W.2d 261, 264 (Tex.App.—Austin 1987, no writ). We may not substitute our opinion for that of the jury merely because we might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

Yap's first point of error is overruled.

In his second point of error, Yap asserts there was no evidence to support the jury's negative finding on the question of ANR's negligent entrustment and, in the alternative, such finding was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. The standards for legal and factual sufficiency of the evidence set forth under Yap's first point of error also apply under his second point.

Negligent entrustment involves five elements: (1) entrustment of a vehicle by the owner, (2) to an unlicensed, incompetent, or reckless driver, (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless, (4) the driver was negligent on the occasion in question, and (5) the driver's negligence proximately caused the accident. *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 571 (Tex.1985). In response to Question three, the jury found that ANR was not negligent in entrusting its truck to Coplin on the date of the accident.

As discussed under point of error one, the jury's failure to find that Coplin's negligence was a proximate cause of the accident was supported by legally and factually sufficient evidence. It therefore follows that Yap failed to prove element (5) of ANR's negligent entrustment, viz., that Coplin's negligence proximately caused the accident.

Yap's second point of error is overruled.

In his third point of error, Yap asserts that the trial court erred in allowing into evidence a photograph of a speed limit sign not previously produced in compliance with discovery requests and a court order.

Assuming, without deciding, that the trial court erred in admitting this photograph, Yap must show that its admission was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Yap argues that the erroneously admitted photograph, which showed a higher speed limit, contradicted Officer Pete's testimony that the speed limit was 35 mph, and less-

ened Coplin's standard of care and duty in the jury's mind. Standard of care and duty are elements of negligence, on which Yap received a favorable finding; they are not elements of proximate cause, on which Yap did not receive a favorable finding. Officer Pete did not testify that Coplin's speed was a *cause* of the collision; he testified only that Coplin's failure to control his speed was a factor contributing to the collision. The jury's finding is consistent with the evidence that the accident was "unavoidable," as that term was defined in the charge—an occurrence "not proximately caused by the negligence of any party to it."

The photograph does not purport to show that Coplin was traveling at a speed greater or less than that testified to by either Coplin or Cyril. Neither does it contradict the testimony of Officer Pete or Yap's expert witness, Turner, that Coplin failed to control his speed. Pete's and Turner's opinions were based upon conditions of weather and road surface. Officer Pete's opinion that Coplin failed to control his speed was not based on a 35 mph or 40 mph speed limit, but was an opinion that Coplin was going too fast or was too close to someone to allow enough space and time to stop. Further, Officer Pete's police report has a category for "speeding over limit," which he did not mark.

Yap has failed to show that the admission of the photograph was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Yap's third point of error is overruled.

In his fourth and final point of error, Yap claims that the trial court erred in excluding partial testimony of his accident reconstruction expert, Turner.

Yap asserts that the exclusion was harmful because it prevented the jury from hearing important and relevant scientific evidence on Coplin's speed, stopping distance, and visibility, as they related to the highly contested issue of proximate cause. Yap asks, "How could the Jury fully determine whether or not the Defendant truck driver exercised extreme caution and slowed down sufficiently, if at all, when they were not permitted to hear expert testimony on the speed, coefficient of friction, visibility, and stopping distances?" He further asserts that his expert was prevented from answering a hypothetical question based on facts in evidence about Coplin's qualifications.

 To complain of the exclusion of evidence on appeal, Yap must show by bill of exception, formal or informal, the substance of what was excluded, and that the evidence excluded was actually offered and excluded.[4] Yap has failed to offer proof of any excluded calculations; thus, he has failed to preserve any error on this complaint. *See Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170, 178 (Tex.App.—Waco 1987, writ denied); *Adams v. Thomas*, 638 S.W.2d 933, 934 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); Tex.R.App.P. 52(a).

Yap also complains that his expert was prevented from answering a hypothetical question concerning the Colorado Safety Department letter dated October 15, 1980, from Williams to McCoy. The court excluded the hypothetical question based on grounds of repetitiveness. Any response to the hypothetical question by the expert was not offered into evidence, and was therefore waived. Tex.R.App.P. 52(a).

 Yap incorrectly complains that the trial court erred in excluding Turner's testimony of visibility available to Coplin. In response to a question as to how Coplin's view would be affected by hazardous conditions, the expert replied, "Depending what was happening exactly at the time of the accident, if it happened to be raining hard, which there was not an indication that it was, then it would be a little more difficult to see but under the certain conditions which I believe existed vision would not be affected."

Any error in excluding testimony from the expert was harmless. The expert's testimony concerning visibility was admitted, and his testimony concerning speed was cumulative of Officer Pete's testimony that

---

4. Turner's report is included in the record, but it was *not offered as an exhibit by Yap.* Nor were portions offered, including the opinions which were excluded.

Coplin failed to control his speed. Testimony concerning stopping distance was admitted. In addition, evidence was admitted from Pete, Coplin, and Cyril regarding speed. The jury heard Turner's expert opinion that Coplin should have reduced his speed while approaching Dillon Street, and his testimony as to stopping distance involved in air brakes.

Turner offered expert opinions: (1) that Coplin should have been able to bring his truck to a safe, timely, and slow stop without jackknifing; (2) that Coplin should have seen the car well in advance of the intersection at Dillon Street; (3) that truck drivers should slow down and, if conditions are bad enough, stop; (4) that Coplin should have applied his brakes in a normal manner, rather than slamming or hitting the brakes; and (5) that, as to stopping distance, Coplin's reduction of his speed would have avoided the accident.

The trial court did not commit error by excluding portions of the expert's testimony. Yap has failed to show that the exclusion was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Gee*, 765 S.W.2d at 396.

Yap's fourth point of error is overruled.

The judgment of the trial court is affirmed.