Opinion issued July 31, 2008
















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00832-CV




MARVIN HARRY DACE, JR., Appellant

V.

TOMMY DACE, INDEPENDENT EXECUTOR OF THE ESTATE OF
MARVIN DACE, SR., DECEASED
Appellee




On Appeal from Probate and County Court at Law Number One
Brazoria County, Texas
Trial Court Cause No. 26,222




MEMORANDUM OPINIONThis is a dispute between two brothers, Marvin Harry Dace, Jr., (“Harry”) and
Tommy Dace (“Tommy”), over the estate of their deceased father, Marvin Harry
Dace, Sr. Following a jury trial, the trial court rendered judgment in favor of Tommy,
in his capacity as independent executor of his father’s estate. On appeal, Harry raises
seven issues with numerous sub-points. We address the following dispositive issues
raised by Harry: (1) whether the evidence was legally sufficient to support the award
of damages against Harry for breach of a written agreement; (2) whether the trial
court erred by rendering judgment “declaring null and void the March 28, 2001 deed
to [Harry] from his parents”; (3) whether prejudgment interest and attorney’s fees
were properly awarded against Harry; (4) whether the trial court properly rendered
judgment ordering that a will signed by Marvin in October 2001 was not Marvin’s
last will and testament; (5) whether the trial court erred “in signing the final judgment
confirming the jury verdict because the jury verdict resulted from aggravated perjury
and undue prejudice”; and (6) whether the trial court erred “in signing the final
judgment because the trial court lacked jurisdiction over the estate of Ernestine Dace. 
          We affirm in part and reverse and render in part. 
Background 
          Marvin Dace, Sr. (“Marvin”) began an air conditioning manufacturing business
(“the business”) in 1953. He and his wife, Ernestine Dace (“Ernestine”), had three
sons: Tommy, Harry, and Dick.


 Harry began working in his father’s business when
he was a child and continued working for the business into adulthood. 
          In 1989, Ernestine and Marvin deeded a one-acre piece of real property to
Harry on West Clover Lane, where a new shop building for the business was
constructed. Ernestine and Marvin also signed a will in 1989. Pursuant to the will,
after the deaths of Ernestine and Marvin, all property in the estate passed to Tommy. 
The will expressly disinherited Harry and Dick. 
          In 1992, Ernestine and Marvin deeded another piece of property to Harry on
West Clover Lane, where the old shop building for the business was located. Also
in 1992, Ernestine and Marvin retired from the day-to-day operations of the business,
and Harry began running the business. 
          In March 2001, Ernestine and Marvin deeded their homestead, also located on
West Clover Lane, to Harry via a “gift deed.” On October 10, 2001, Ernestine and
Marvin sued Harry. They alleged that Harry had not paid them 50 per cent of the net
proceeds from the business’s operation, as he had orally agreed. More precisely,
Ernestine and Marvin alleged that Harry had agreed to pay them such proceeds in
exchange for renting the equipment and the property used to run the business. 
Ernestine and Marvin also challenged the validity of the 2001 deed transferring their
homestead to Harry. 
          Seven days after the suit was filed, Harry presented a new will to Marvin, who
resided in a nursing home. Marvin signed the new will on October 17, 2001. 
Pursuant to the will, Marvin left his entire estate to Harry. Although she was still
living, the new will made no mention of Ernestine. Nor did the will expressly
mention Tommy or Dick. 
          Ernestine died on January 16, 2002, and Marvin passed away on November 20,
2002. After Marvin’s death, Tommy, as independent executor of Marvin’s estate,
maintained the lawsuit against Harry. Tommy added a new claim challenging the
validity of the October 2001 will. At Tommy’s request, the trial court permitted the
following trial amendment: that Harry breached a written contract, rather than an oral
one as pled, with Ernestine and Marvin for the purchase of the business. 
          After a two-week trial, the jury made the following findings:
 
          •        The October 17, 2001 will was not Marvin’s last will and testament.
 
          •        Ernestine and Marvin entered into a written agreement for the sale of the
business known as “Dace Manufacturing” to Harry.
 
          •        Harry intended to bind himself to an agreement with Ernestine and
Marvin that included the following term: “The parties agreed to a 50/50
split of the net profits from the business to be paid on a yearly basis,
with the 50% net profit to Marvin H. Dace, Sr. and Ernestine Dace.”
 
          •        Harry breached that agreement.
 
          •        As a result of the breach, Ernestine and Marvin suffered $246,058.50 in
damages.
 
          •        Relating to the breach of contract, Tommy, as independent executor, was
entitled to $34,000 in attorney’s fees.
 
          •        Harry used neither fraud nor misrepresentations to obtain the execution
of the 2001 real estate deed.
 
          •        Harry used duress and undue influence to obtain the execution of the
2001 real estate deed.
 
          •        Neither Ernestine nor Marvin ever ratified the conveyance of the “2001
property.”

          The trial court signed a judgment on the findings, ordering as follows:
 
          •        “[T]he Last Will and Testament of Marvin H. Dace, Sr. dated October
19, 1989, is [Marvin’s] Last Will and Testament.” 
 
          •        “[T]he deed dated March 28, 2001 signed by [Marvin and Ernestine] as
Grantors . . . is null, void and invalid and of no force and effect, and is
hereby cancelled.”
 
          •        “[T]he deed dated March 28, 2001, signed by [Marvin and Ernestine]
and as more particularly described in exhibit “A” attached hereto and
incorporated for all purposes is quieted in the Estate of Marvin Dace,
Sr., Deceased, and further that said estate is the true and lawful owner
of said tract.”
 
          •        “Tommy Dace, Independent Executor of the Estate of Marvin H. Dace,
Sr., Deceased, shall have and recover from Marvin Harry Dace, Jr., the
sum of Two Hundred Forty Eight Thousand Fifty Eight and 50/100's
Dollars ($248,058.50) as damages herein, together with prejudgment
interest of $55,008.65. . . . 
 
          •        “Tommy Dace, Independent Executor of the Estate of Marvin H. Dace,
Sr., Deceased, shall have and recover from Marvin Harry Dace, Jr.,
attorneys fees in the sum of Thirty-Four Thousand and no/100's Dollars
($34,000.00) for services rendered through trial of this case.”
 
          •        “[T]he award of attorney’s fees is part of the judgment hereof rendered
and that the judgment herein rendered shall bear interest at the rate of
Six Percent (6%) from the date of judgment until fully paid.”
 
          •        All costs of court were awarded against Harry.

          Presenting seven issues, with numerous sub-points, Harry appeals the trial
court’s judgment.
Legal Sufficiency
          In his first issue, Harry challenges the trial court’s award of $248,058.50 in
damages for breach of contract. Among his challenges, Harry attacks the legal
sufficiency of the evidence to support the jury’s findings that he entered into a written
contract with his parents for the sale of the business and that, as part of the agreement,
Harry agreed “to a 50/50 split of the net profits from the business to be paid on a
yearly basis” to his parents.



          In deciding a legal-sufficiency challenge, we determine whether there is
evidence that would enable reasonable and fair-minded people to reach the verdict
under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). To make
this determination, we (1) credit all favorable evidence that reasonable jurors could
believe; (2) disregard all contrary evidence, except that which they could not ignore;
(3) view the evidence in the light most favorable to the verdict; and (4) indulge every
reasonable inference that would support the verdict. Id. at 822, 827. But, we may not
disregard evidence that allows only one inference. Id. at 822.
          Here, the jury was instructed, “To prove an action for breach of contract,
Plaintiff must establish an offer, acceptance, mutual assent and mutuality of
obligations supporting the agreement.” See Roman v. Roman, 193 S.W.3d 40, 50
(Tex. App.—Houston [1st Dist.] 2006, pet. denied) (identifying elements of breach
of contract claim). To challenge the jury’s finding of a written contract for the sale
of the business, Harry asserts that no evidence was presented to show that his parent’s
offered to sell him the business or that he accepted such offer. And he contends that
legally insufficient evidence was presented to show a written contract. 
          No written contract between Harry and his parents was offered at trial. Instead,
to establish the existence of a written contract, Tommy testified that, in 1993, Marvin
showed him a handwritten contract drafted by Marvin and signed by Harry. Tommy
testified that, under the terms of the written contract, Harry agreed to pay his parents
50 percent of the business’s net profits. Tommy also testified that the written
agreement was a lease agreement between Harry and his parents. Tommy did not
testify that he saw a written agreement regarding the sale of the business to Harry. 
While some evidence was presented at trial indicating that Harry had purchased the
business from his parents, rather than leasing it, no evidence was presented that Harry
had entered into a written contract with his parents for the purchase of the business. 
To the contrary, Tommy testified that the written contract he saw was a rental
agreement between Harry and his parents. 
          Applying the appropriate standard, we hold that legally insufficient evidence
supports the jury’s finding that Harry entered into a written agreement with his
parents to purchase the business. Thus, we further hold that Tommy, as independent
executor of Marvin’s estate, should take nothing by his breach of contract claim
against Harry. 
          We sustain Harry’s first issue. 
Attorney’s Fees and Prejudgment Interest
          In his third and fourth issues, Harry contends that the trial court erred by
awarding Tommy prejudgment interest and attorney’s fees. We agree. 
          Both the award of attorney’s fees and prejudgment interest were predicated on
the breach of contract award, which we have determined to be supported by legally
insufficient evidence. Because he did not prevail on the breach of contract claim, and
is therefore not entitled to an award of actual damages under that claim, Tommy is not
entitled to recover attorney’s fees and prejudgment interest. See Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(8) (Vernon 2008) (permitting recovery of reasonable
attorney’s fees for breach of contract); see also First Am. Title v. Willard, 949 S.W.2d
342, 352 (Tex. App.—Tyler 1997, writ denied) (“Upon reversal of a claimant’s
judgment, all dependent causes of action are simultaneously defeated.”).
          We sustain Harry’s third and fourth issues.
2001 Deed
          In his second issue, Harry contends that the trial court erred “in declaring null
and void the March 28, 2001 deed to [Harry] from his parents.” 
          As mentioned, the jury found that Harry obtained the execution of the 2001
deed from his parents through the use of undue influence. To support his second
issue, Harry contends that no evidence was presented to support the undue influence
finding. 
          Here, the jury was instructed that undue influence
means that there was such domination and control exercised over the
mind of the person entering into the agreement, under the facts and
circumstances then existing, as to overcome his free will. In effect the
will of the party exerting undue influence was substituted for that of the
party entering into the agreement, preventing him from exercising his
own discretion and causing him to do what he would not have done but
for such domination and control.
          The jury was further instructed, 
The elements of undue influence require that the person alleging such
undue influence must prove:
 
a.the existence and exertion of an influence;
 
bthe effective operation of such influence so as to subvert or
overpower the mind of the maker of the document at the time of
execution of the document; 
 
c.the execution of the document which the maker thereof would not 
have executed but for such influence.



See Rothermel v. Duncan, 369 S.W.2d 917, 922 (Tex. 1963) (setting forth elements
of undue influence).
          Undue influence involves an extended course of dealings and circumstances, 
which may be proven by direct or circumstantial evidence. See Watson v. Dingler,
831 S.W.2d 834, 837 (Tex. App.—Houston [14th Dist.] 1992, writ denied). For this
reason, it is proper to consider evidence of all relevant matters that occurred within
a reasonable time before or after execution of the deed that tend to prove the
existence of undue influence at the time of execution. See id. All material facts may
be considered, including: the circumstances attending execution of the instrument;
the relationship between the maker and the beneficiaries; the motive, character, and
conduct of those benefitted by the instrument; the words and acts of all attending
parties; the physical and mental condition of the maker at the time of the execution
of the instrument; the maker’s age, weakness, infirmity, and dependency on or
subjection to the control of the beneficiary; and the improvidence of the transaction
by reason of unjust, unreasonable, or unnatural disposition. Id.
          In this case, the evidence showed that, at the time that the deed was executed
in March 2001, both Ernestine and Marvin were elderly and in ill health. Ernestine
suffered from cancer and was taking morphine. Marvin resided in a nursing home. 
He had suffered a stroke leaving him paralyzed on his right side with little use of his
left arm. Tommy testified that Marvin could not feed or dress himself and could not
have held a pen to sign a document. Other than responding “yes” or “no,” Marvin
was unable to speak or hold a conversation. Tommy also indicated that Marvin had
no “mental understanding of a document such as a deed.” 
          The evidence showed that Ernestine and Marvin were dependent on Harry to
supplement their income with funds from the business, including paying for Marvin’s
nursing home care. Tommy testified that, in 2001, Harry began cutting back on the
funds he gave his parents. 
          The record further shows that, in 2000, Tommy searched the real property
records and discovered that his parents had deeded property to Harry in 1989 and in
1992. Tommy testified that Ernestine told him that she and Marvin had never deeded
these properties to Harry. According to Tommy, when he confronted Harry in March
2000 about the 1992 deed, the first thing that Harry mentioned was that Marvin and
Ernestine were ill at the time of the 1992 conveyance. Tommy confirmed that Marvin
and Ernestine were in ill health in 1992. Tommy also testified that Harry then
boasted that Tommy ought to be glad that Harry had not taken the “home place”
because Marvin and Ernestine “would have signed anything I put in front of them.” 
One year after Harry made this statement, Marvin and Ernestine did sign a “gift deed”
conveying their homestead to Harry. 
          Tommy further testified that Ernestine denied that she and Marvin had deeded
their home to Harry. Letters written by Ernestine to Harry in 2001 indicate that she
had not intended to give him her home and informed Harry that he would not receive
anything more from her. Not only does correspondence in the record indicate that
Ernestine did not want Harry to receive any portion of her estate, Marvin’s and
Ernestine’s 1989 will expressly disinherited Harry. The record reflects that, in
October 2001, Harry changed the locks on Marvin and Ernestine’s home and refused
to allow Ernestine access to retrieve any of her personal items. 
          Evidence was also presented depicting Harry as abrasive and domineering. 
Testimony was admitted that, at times, he was verbally abusive to his parents. The
record further reflects that, over the years, Harry had a volatile relationship with his
parents. 
          At trial, Harry introduced a videotape from November 2001. The video shows
Harry taking Ernestine to the offices of Dace Manufacturing. Ernestine appears tired
and not to be feeling well. Harry questions Ernestine regarding whether she wants
to sue him, and she says she does not. The video shows Ernestine signing an
affidavit, prepared by Harry, in which Ernestine states that she does not want to sue
Harry. The video then shows Ernestine calling her attorney from Harry’s office with 
Harry at her side. Once she reaches her attorney’s office on the telephone, Harry
instructs his mother what to say regarding dismissing the suit against him. 
          The record further reflects that Ernestine later regretted initiating the dismissal
of the suit and continued the prosecution of the suit against Harry.
          Applying the appropriate standard of review, we hold that legally sufficient
evidence was presented to support the jury’s finding of undue influence, which
supports the portion of the trial court’s judgment voiding and cancelling the 2001
conveyance.



          We overrule Harry’s second issue.
Marvin’s 2001 Will
          In his fifth issue, Harry contends that the trial court erred when it rendered
judgment that the October 17, 2001 will signed by Marvin was not his last will and
testament. 
          In the charge, the jury was instructed that it should answer “no” to the question
asking whether the October 17, 2001 will was Marvin’s last will and testament if it
found that Marvin did not have testamentary capacity at the time. In this regard, the
jury was instructed, 
Testamentary capacity means sufficient mental ability, at the time of will
execution, to understand the business in which the testator is engaged,
the effect of his act in making the will, and the nature and extent of his
property; the testator must also know his next of kin and the natural
objects of his bounty, and have sufficient memory to assimilate the
elements of the business to be transacted, to hold those elements long
enough to perceive their relation to each other, and to form a reasonable
judgment as to them. 

See Lowery v. Saunders, 666 S.W.2d 226, 232 (Tex. App.—San Antonio 1984, writ
ref’d n.r.e.) (providing similar definition). 
          In support of this issue, Harry asserts that the 2001 will was “self-proving” and
thus valid. However, as the proponent of the 2001 will, Harry had the burden to
prove that his father had testamentary capacity on October 17, 2001 when he
executed the new will. See Croucher v. Croucher, 660 S.W.2d 55, 57 (Tex. 1983). 
The fact that a will is self-proving does not relieve the will’s proponent of the burden
to establish testamentary capacity of the testator. Id. 
          Harry contends that “[t]here is no probative evidence that Marvin was
incompetent at the time he signed the will.” As mentioned, it was Harry’s burden, as
proponent of the 2001 will, to show that Marvin had testamentary capacity. Because
Harry had the burden at trial to show that Marvin had testamentary capacity, we reject
Harry’s contention that “no evidence” supports the jury’s finding regarding the 2001
will; Tommy was not obliged to prove that Marvin did not have testamentary
capacity. See Yap v. ANR Freight Sys., 789 S.W.2d 424, 425 (Tex. App.—Houston
[1st Dist.] 1990, no writ).
          When a party challenges the legal sufficiency of the evidence on an issue on
which he had the burden of proof at trial, he must demonstrate on appeal that the
evidence conclusively establishes all vital facts in support of the issue as a matter of
law. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In determining whether legally
sufficient evidence supports the finding under review, we must consider evidence
favorable to the finding if a reasonable fact finder could consider it, and disregard
evidence contrary to the finding unless a reasonable fact finder could not disregard
it. Keller, 168 S.W.3d at 827. 
          Here, after considering the evidence supporting the finding in the context of
the record as a whole, we conclude that Harry has not demonstrated on appeal that the
evidence conclusively establishes that Marvin had testamentary capacity as a matter
of law. Although Harry points to testimony arguably supporting a finding that
Marvin had testamentary capacity, other witnesses, including Tommy, Marvin’s
granddaughter, a court-appointed investigator, and Marvin’s court-appointed
guardian, provided testimony weighing against such a finding. Given the record, the
jury was entitled to believe the witnesses’ testimony weighing against an implied
finding of testamentary capacity and to disbelieve the testimony cited by Harry. We
defer to the jury’s determination in this case regarding the credibility of the witnesses,
the weight to be given the testimony, and the resolution of the evidentiary conflicts. 
See id. at 819, 822.
          We hold that the evidence was legally sufficient to support the determination
that the October 17, 2001 will signed by Marvin was not his last will and testament. 
          We overrule Harry’s fifth issue.
Undue Prejudice and Perjury
          In his sixth issue, Harry contends that the trial court erred by “signing the final
judgment confirming the jury verdict because the jury verdict resulted from
aggravated perjury and undue prejudice” which “inflamed” the jury. Harry raises
several arguments to support this issue.
          Providing little supporting argument and citing no legal authority, Harry first
briefly alludes to the trial court’s ruling allowing Tommy to testify that, in 1989,
Harry discharged a firearm at his parents’ home following an argument between
Harry and his parents. The testimony revealed that the argument was precipitated by
Harry’s burning down of a vacant house on his parents’ property without their
permission. Harry points out that, at trial, he objected that the prejudicial effect
outweighed the probative value of the testimony. See Tex. R. Evid. 403. When a
party objects under Rule 403, a trial court must conduct a balancing test, weighing the
danger of prejudice against the probative value of the evidence. Waldrep v. Tex.
Employers Ins. Ass’n, 21 S.W.3d 692, 703 (Tex. App.—Austin 2000, pet. denied). 
To obtain a reversal because of admitted evidence, the appellant must demonstrate
that the whole case turns on the particular evidence admitted. City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753–54 (Tex. 1995). Harry has not demonstrated that the
entire case turned on the disputed testimony. 
          Moreover, the disputed testimony was relevant to show how Harry interacted
with and responded to his parents. Any risk of unfair prejudice must be measured
against the relevancy of the evidence. See Campbell v. State, 118 S.W.3d 788, 795
(Tex. App.—Houston [14th Dist.] 2003, pet. denied). Given the claims in this case,
it was important for the jury to be given historical information regarding Harry’s
relationship with his parents. We cannot say that the trial court abused its discretion
by admitting Tommy’s testimony regarding Harry’s use of the firearm and the events
surrounding the incident. 
          Harry also cites Tommy’s testimony regarding a letter written by Harry to
Tommy’s employer. When asked on direct examination whether Harry sent a letter
to his employer asking Tommy to be fired, Tommy responded that the letter was sent
to the owner of the company for which he worked. Harry contends that Tommy’s
testimony in this regard constituted “perjury” that prejudiced the jury against him. 
However, as pointed out by Harry, the letter, which was admitted into evidence, did
not request that Tommy’s employer fire him. Thus, any potential prejudice that may
have been caused by Tommy’s testimony was ameliorated by the introduction of the
letter. 
          Finally, Harry complains that the closing argument of Tommy’s counsel was
prejudicial and misrepresented the evidence. Harry made no objection to any of the
argument cited; thus, his complaint is waived.


 See Tex. R. App. P. 33.1; Barras v.
Monsanto Co., 831 S.W.2d 859, 865 (Tex. App.—Houston [14th Dist.] 1992, writ
denied) (holding that complaint of error in closing argument waived by failure to
object).
          We overrule Harry’s sixth issue.
Jurisdiction
          In his seventh issue, Harry contends, “The trial court erred in signing the final
judgment because it lacked jurisdiction over the estate of Ernestine Dace.” Despite
Harry’s assertion that Tommy made claims on behalf of Ernestine’s estate, the record
reflects otherwise. Tommy only asserted claims against Harry on behalf of Marvin’s
estate, and the trial court made no award to Ernestine’s estate in its judgment. 
Although the jury was asked to make fact findings that involved Ernestine, these were
simply factual determinations and did not result in any award to Ernestine’s estate.
          Moreover, as pointed out by Tommy, the record reflects that, after her death,
everything in Ernestine’s estate passed to Marvin and became part of his estate. 
Thus, any potential claims that Ernestine had against Harry also passed to Marvin. 
          We overrule Harry’s seventh issue.
Conclusion
          We reverse the portions of the judgment awarding $248,058.50 in damages,
$55,008.65 in prejudgment interest, and $34,000 in attorney’s fees against Harry and
render judgment that Tommy, as independent executor of Marvin’s estate, takes
nothing by the breach of contract claim. We affirm the remaining portions of the
judgment.
 
 
                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.