In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00061-CV


____________________






GREGORY SCOTT CHAPMAN, Appellant



V.



MARTHA BROWDER, Appellee 


 




On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 06-05-05014-CV






MEMORANDUM OPINION



 Appellant Gregory Scott Chapman sued appellee Martha Browder for injuries
Chapman allegedly sustained in an automobile accident. The jury found that Browder was
not negligent and did not award any damages to Chapman. Chapman then filed this appeal,
in which he contends the jury's findings of no negligence and no damages were against the
great weight and preponderance of the evidence. We affirm.


The Evidence


 Browder testified that she and Chapman were stopped at a red light, and when the
light turned green, she went straight instead of turning as she should have, and she struck
Chapman's vehicle while Chapman was making a turn. Browder testified that the accident
was her fault, and that Chapman did nothing wrong. Browder explained that both vehicles
were traveling "very slowly." According to Browder, she and Chapman spoke after the
accident, and they both indicated that they were not injured. Browder testified that it would
be fair for her to compensate Chapman for his damages "[i]f they were caused by this
accident[.]"

 Chapman testified that the accident with Browder occurred while he was going to
lunch. Chapman stopped at the intersection of the I-45 feeder road and 242 in a lane from
which vehicles could either turn left or go straight, and to Chapman's left was the left-turn-only lane. When the light turned green, Chapman began to turn left, and Browder's vehicle
struck the driver's side door of Chapman's vehicle. Chapman said that he had no warning,
he did not see Browder until he was making the turn, and he was unable to brace himself. 
Chapman explained that as the impact occurred, he was slung to his right and left, his head
struck the window, and his left arm struck something, and his wrist struck something. 
Chapman was unable to open the driver's side door, so he got out of his vehicle using the
passenger-side door. According to Chapman, the damages to his two-month-old vehicle
amounted to just under $8,000, and the value of the vehicle was also diminished by $3,000. 
Chapman testified that after the accident, he did not tell Browder that he was all right, but
"I probably said I'm probably okay."

 Hours after the accident, Chapman began experiencing tightness and pulling in his
shoulders, but he did not seek medical attention that day because he wanted to see if the
problem would go away "with a little bit of time." Chapman testified that after
approximately eleven days, his neck and shoulders were getting worse, so he went to Dr.
Garcia in Port Arthur to have an MRI. Chapman explained that Dr. Garcia is his wife's
cousin, and he went to see Dr. Garcia because Dr. Garcia could see him and tell him his
results immediately. Chapman eventually saw Dr. Shedden, a neurosurgeon, who ordered
a myelogram. Dr. Shedden recommended that Chapman have an anterior cervical
discectomy with anterior interbody fusion at the C5-6, C6-7 level. Dr. Shedden also found
that Chapman had spinal stenosis at L4-5, secondary to facet hypertrophy and inflamed disc
herniation. Chapman decided to seek a second opinion from Dr. MacDougall. Chapman
asked Dr. MacDougall to testify at trial, but Chapman was unable to get Dr. MacDougall to
do so or to give a deposition.

 Chapman testified that he worked for a number of years as an insurance adjuster. 
Chapman opined that the physical problems that required him to have neck and back surgery
resulted from the accident. On direct examination, Chapman testified that he had not
suffered from back problems before the accident, but he had some neck issues in 1999 and
2004. In addition, Chapman testified that he had two prior car accidents, but he was not
injured in the first, and he suffered only a neck strain in the second. Chapman testified that
he did not have physical pains or problems until the accident with Browder.

 On cross-examination, Chapman admitted that in his deposition, he had testified that
he was not wearing his seatbelt when the accident occurred. Chapman also testified that his
employer always paid him during the time he missed work, and he explained that he
ultimately lost his job because he was laid off, not because of the accident. In addition,
Chapman testified that at his deposition, he had testified that he did not have any emotional
or mental injuries as a result of the car accident. Chapman also testified that the peace officer
who arrived at the accident scene indicated on his report that Chapman was not injured. 
Chapman admitted that instead of returning to a medical facility near his home for an MRI,
he drove one hundred twenty miles to Port Arthur for an MRI, eleven days after the accident. 
Chapman also testified that five years before the accident with Browder, he had been told
that cervical neck surgery "was an option." Chapman explained that he told the doctors who
treated him after the accident with Browder that he had suffered from a cervical problem in
1999. He did not tell them he had previously been told that he was a surgical candidate.

 After being shown the report from the MRI ordered by Garcia, Chapman admitted that
the report stated, "The findings are similar to those observed in the previous study of 1999." 
Chapman also admitted that when he was admitted to the emergency room in 1999, the first
diagnosis was "back pain" and the second diagnosis was "chronic radiculopathy[,]" yet he
had testified in his deposition that one of the new symptoms he experienced after the 2004
accident with Browder was radicular pain from his neck. Chapman also admitted that he
made a claim for money damages resulting from automobile accidents in 1996, 2002, and
March of 2004. In addition, Chapman admitted that none of the doctors who treated him
after the accident with Browder saw any of the records relating to his treatment for the prior
automobile accidents. Chapman testified that an MRI from 2006 also revealed that he
suffered from congenital lumbar stenosis, which was ultimately corrected during Chapman's
back surgery.

 Chapman offered the testimony of orthopedic surgeon Dr. Barry Allen Nelms by
videotape deposition. Dr. Nelms testified that he was asked to evaluate Chapman and render
an expert opinion concerning Chapman's injuries, but he was not one of Chapman's treating
physicians. Dr. Nelms reviewed Chapman's medical records, examined him, and spent
approximately forty minutes with Chapman. According to Dr. Nelms, someone with a
congenitally narrow or small spinal canal or degenerative disc disease is more susceptible to
injury. Dr. Nelms testified that Chapman had a two-level cervical anterior discectomy and
fusion surgery, and within reasonable medical probability, the surgery was necessitated by
the automobile accident with Browder. Dr. Nelms explained that Chapman subsequently had
another surgery involving his lumbar spine, which was also necessitated by the accident with
Browder. According to Dr. Nelms, Chapman also suffered from degenerative disc disease.

 Dr. Nelms testified that Chapman had suffered from a neck injury in 1999, when he
was treated for cervical pain and radiculopathy into his left arm, and an MRI scan at that time
showed bulging discs. According to Dr. Nelms, Chapman was treated conservatively, and
his symptoms resolved. Dr. Nelms also indicated that Chapman had been involved in two
other car accidents in February and March of 2004, but that Chapman "did not have
significant pain in either one of the accidents, and the symptoms resolved in a very short
period of time." According to Dr. Nelms, Chapman's MRI scan revealed an annular tear on
one of his discs, and Dr. Nelms opined that the accident with Browder caused the tear.

Chapman's Issues


 In his first issue, Chapman contends the jury's finding that Browder was not negligent
is against the great weight and preponderance of the evidence. In his second issue, Chapman
asserts the jury's finding that he suffered no damages was against the great weight and
preponderance of the evidence. We address these issues together. When a party attacks the
factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he
must demonstrate on appeal that the adverse finding is against the great weight and
preponderance of the evidence. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In
reviewing the factual sufficiency of the evidence, we must consider and weigh all of the
evidence, and we may set aside a verdict only if the evidence is so weak or if the finding is
so against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). When reversing for
factual insufficiency, the court of appeals must detail the evidence relevant to the issue and
explain how the contrary evidence greatly outweighs the evidence that supports the verdict. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).

 The case was submitted to the jury in two questions, as follows:

Question No. 1



 Did the negligence of Martha Browder proximately cause the occurrence in
question?


 "Negligence" means failure to use ordinary care, that is, failing to do
that which a person of ordinary prudence would have done under the same or
similar circumstances or doing that which a person of ordinary prudence would
not have done under the same or similar circumstances.


 "Ordinary care" means that degree of care that would be used by a
person of ordinary prudence under the same or similar circumstances.


 Answer: "Yes" or "No"


 Answer: No 


Question No. 2



 What sum of money, if paid now in cash, would fairly and reasonably
compensate Scott Chapman for his injuries, if any, that resulted from the
occurrence in question?


 Consider the elements of damages listed below and none other. 
Consider each element separately. Do not award any sum of money on any
element if you have otherwise, under some other element, awarded a sum of
money for the same loss. That is, do not compensate twice for the same loss,
if any. Do not include interest on any amount of damages you find.

 

 Do not include any amount for any condition not resulting from the
occurrence in question.


 Do not include any amount for any condition existing before the
occurrence in question, except to the extent, if any, that such other condition
was aggravated by any injuries that resulted from the occurrence in question.


 Answer separately, in dollars and cents, for damages, if any. Do not
reduce the amounts, if any, in your answers because of the negligence, if any,
of Scott Chapman.


The jury answered "" with respect to each of the elements of damages listed in question
two, which included past physical pain and mental anguish, future physical pain and mental
anguish, loss of earning capacity sustained in the past, loss of future earning capacity, past
disfigurement, future disfigurement, past physical impairment, future physical impairment, 
past medical expenses, and future medical expenses.

 All of the evidence adduced at trial indicated that the accident occurred as a result of
Browder's decision to proceed straight from a left-turn-only lane, which caused her to strike
Chapman's vehicle. However, assuming without deciding that the jury's answer to question
one, which asked whether Browder's negligence proximately caused the accident, was
against the great weight and preponderance of the evidence, we turn to the issue of whether
the jury's answers to question two were against the great weight and preponderance of the
evidence. Question two expressly instructed the jury not to award Chapman any amount for
any condition "not resulting from the occurrence in question." In addition, question two also
instructed the jury not to include any amount for conditions existing before the accident,
except to the extent that any such pre-existing condition was aggravated by any injuries
resulting from the accident.

 The jury heard evidence from Chapman that his physical problems resulted from the
accident, and that he had not previously suffered from back problems or physical pain. In
addition, the jury heard evidence from Dr. Nelms that Chapman's surgeries were necessitated
by the automobile accident with Browder. However, the jury also heard evidence that
Chapman had been in prior car accidents, for which he had made claims for money damages, 
and that Chapman did not inform the doctors who treated him after the accident with
Browder of his prior history of automobile accidents. In addition, the jury heard evidence
that Chapman had been told in 1999 that he was a candidate for cervical surgery, and that a
report from an MRI after the accident with Browder indicated that the findings were "similar
to those observed in the previous study of 1999." Furthermore, the jury heard evidence that
Chapman suffered from congenital lumbar stenosis. Finally, the evidence also showed that
instead of seeking treatment from a medical provider near his home, Chapman sought
medical treatment from his wife's relative in another city.

 The jury is the exclusive judge of the credibility of witnesses and the weight to be
given to their testimony. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 
In addition, as factfinder, the jury is free to disbelieve expert witnesses. See Waltrip v.
Bilbon Corp., 38 S.W.3d 873, 882 (Tex. App.--Beaumont 2001, pet. denied); see also Yap
v. ANR Freight Sys., Inc., 789 S.W.2d 424, 425 (Tex. App.--Houston [1st Dist.] 1990, no
writ). "[O]pinion testimony, even when uncontroverted, does not necessarily bind the jury." 
Waltrip, 38 S.W.3d at 882; see also McGalliard, 722 S.W.2d at 697. Weighing all of the
evidence, the jury's finding of no damages as to all of the elements of damages in question
two is not so against the great weight and preponderance of the evidence that it is clearly
wrong and manifestly unjust. See Pool, 715 S.W.2d at 635. Therefore, even if the jury's
answer to question one was against the great weight and preponderance of the evidence, such
error was harmless, since it did not cause the rendition of an improper judgment; that is, even
if the jury had answered question one affirmatively, the jury's finding of no damages in
response to question two was supported by sufficient evidence. See generally Tex. R. App.
P. 44.1(a)(1). Accordingly, we overrule issues one and two and affirm the trial court's
judgment.

 AFFIRMED.

 

 STEVE McKEITHEN

 Chief Justice


Submitted on October 30, 2009

Opinion Delivered January 28, 2010


Before McKeithen, C.J., Gaultney and Horton, JJ.